**JUDGE McKENNA**   08 CV 3355

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
BY: SHARON E. FRASE (SF-4906)
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2329



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA            :

       - v. -                       :

$28,839.50 FORMERLY ON DEPOSIT IN   :   VERIFIED COMPLAINT
ACCOUNT NO. ▆0830, IN THE NAME
OF eCOMMERCE CUBED, INC., HELD AT   :   08 Civ.
WESTSIDE BANK, AND ALL FUNDS
TRACEABLE THERETO;                  :

$6,043.44 FORMERLY ON DEPOSIT IN    :
ACCOUNT NO. ▆0849, IN THE NAME
OF eCOMMERCE CUBED, INC., HELD AT   :
WESTSIDE BANK, AND ALL FUNDS
TRACEABLE THERETO;                  :

$91,431.79 FORMERLY ON DEPOSIT IN   :
ACCOUNT NO. ▆8653, IN THE
OF eCOMMERCE CUBED, HELD AT         :
NAME IRONSTONE BANK, AND ALL FUNDS
TRACEABLE THERETO;                  :

$57,709.46 FORMERLY ON DEPOSIT IN   :
ACCOUNT NO. ▆7836, IN THE NAME
OF TRANSACTION TECHNOLOGIES, HELD   :
AT FIRST CITIZEN'S BANK, AND ALL
FUNDS TRACEABLE THERETO;            :

$101.18 FORMERLY ON DEPOSIT IN      :
ACCOUNT NO. ▆8187, IN THE NAMES
OF STEVEN ENGELSON, FRANCES         :
REORANGI, GLOBAL USI COMMUNICATIONS
GLOBAL USI SERVICES, GLOBAL USI     :
COMMUNICATION SERVICES, INC, USI
AMERICA, LLC, OR ICASH SYSTEMS,     :
HELD AT FIRST NORTHERN BANK, AND
ALL FUNDS TRACEABLE THERETO;        :

$2,386.89 FORMERLY ON DEPOSIT IN :
ACCOUNT NO. ▓6168, IN THE NAMES
OF STEVEN ENGELSON, FRANCES :
REORANGI, GLOBAL USI COMMUNICATIONS,
GLOBAL USI SERVICES, GLOBAL USI :
COMMUNICATION SERVICES, INC, USI
AMERICA, LLC, OR ICASH SYSTEMS, :
HELD AT FIRST NORTHERN BANK, AND
ALL FUNDS TRACEABLE THERETO; :

$1,777.00 FORMERLY ON DEPOSIT IN :
ACCOUNT NO. ▓3222, IN THE NAMES
OF STEVEN ENGELSON, FRANCES :
REORANGI, GLOBAL USI COMMUNICATIONS,
GLOBAL USI SERVICES, GLOBAL USI :
COMMUNICATION SERVICES, INC, USI
AMERICA, LLC, OR ICASH SYSTEMS, :
HELD AT FIRST NORTHERN BANK, AND
ALL FUNDS TRACEABLE THERETO; :

$870.84 FORMERLY ON DEPOSIT IN :
ACCOUNT NO. ▓3392, IN THE NAMES
OF STEVEN ENGELSON, FRANCES :
REORANGI, GLOBAL USI COMMUNICATIONS,
GLOBAL USI SERVICES, GLOBAL USI :
COMMUNICATION SERVICES, INC, USI
AMERICA, LLC, OR ICASH SYSTEMS, :
HELD AT FIRST NORTHERN BANK, AND
ALL FUNDS TRACEABLE THERETO; :

$525.52 FORMERLY ON DEPOSIT IN :
ACCOUNT ▓▓9344, IN THE NAME OF
USI SERVICES, HELD AT FIFTH THIRD :
BANK, AND ALL FUNDS TRACEABLE
THERETO; :

                Defendants in rem. :

- - - - - - - - - - - - - - - - - - -x

        Plaintiff United States of America, by its attorney

Michael J. Garcia, United States Attorney for the Southern

District of New York, for its verified complaint, alleges, upon information and belief, as follows:

## I. JURISDICTION AND VENUE

1. This action is brought pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984 by the United States of America seeking the forfeiture of the following sums of money:

$28,839.50 FORMERLY ON DEPOSIT IN ACCOUNT NO. ▇0830, IN THE NAME OF eCOMMERCE CUBED, INC., HELD AT WESTSIDE BANK, AND ALL FUNDS TRACEABLE THERETO;

$6,043.44 FORMERLY ON DEPOSIT IN ACCOUNT NO. ▇0849, IN THE NAME OF eCOMMERCE CUBED, INC., HELD AT WESTSIDE BANK, AND ALL FUNDS TRACEABLE THERETO;

$91,431.79 FORMERLY ON DEPOSIT IN ACCOUNT NO. ▇8653, IN THE OF eCOMMERCE CUBED, HELD AT NAME IRONSTONE BANK, AND ALL FUNDS TRACEABLE THERETO;

$57,709.46 FORMERLY ON DEPOSIT IN ACCOUNT NO. ▇7836, IN THE NAME OF TRANSACTION TECHNOLOGIES, HELD AT FIRST CITIZEN'S BANK, AND ALL FUNDS TRACEABLE THERETO;

$101.18 FORMERLY ON DEPOSIT IN ACCOUNT NO. ▇8187, IN THE NAMES OF STEVEN ENGELSON, FRANCES REORANGI, GLOBAL USI COMMUNICATIONS GLOBAL USI SERVICES, GLOBAL USI COMMUNICATION SERVICES, INC, USI AMERICA, LLC, OR ICASH SYSTEMS, HELD AT FIRST NORTHERN BANK, AND ALL FUNDS TRACEABLE THERETO;

$2,386.89 FORMERLY ON DEPOSIT IN ACCOUNT NO. ▇6168, IN THE NAMES OF STEVEN ENGELSON, FRANCES REORANGI, GLOBAL USI COMMUNICATIONS, GLOBAL USI SERVICES, GLOBAL USI COMMUNICATION SERVICES, INC, USI AMERICA, LLC, OR ICASH SYSTEMS, HELD AT FIRST NORTHERN BANK, AND ALL FUNDS TRACEABLE THERETO;

$1,777.00 FORMERLY ON DEPOSIT IN ACCOUNT NO. ▇3222, IN THE NAMES OF STEVEN ENGELSON, FRANCES REORANGI, GLOBAL USI COMMUNICATIONS, GLOBAL USI SERVICES, GLOBAL USI COMMUNICATION SERVICES, INC, USI AMERICA, LLC, OR ICASH SYSTEMS, HELD AT FIRST NORTHERN BANK, AND ALL FUNDS TRACEABLE THERETO;

$870.84 FORMERLY ON DEPOSIT IN ACCOUNT NO. ▇3392, IN THE NAMES OF STEVEN ENGELSON, FRANCES REORANGI, GLOBAL USI COMMUNICATIONS,

GLOBAL USI SERVICES, GLOBAL USI COMMUNICATION SERVICES, INC, USI AMERICA, LLC, OR ICASH SYSTEMS, HELD AT FIRST NORTHERN BANK, AND ALL FUNDS TRACEABLE THERETO;

$525.52 FORMERLY ON DEPOSIT IN ACCOUNT ▮▮▮▮9344, IN THE NAME OF USI SERVICES, HELD AT FIFTH THIRD BANK, AND ALL FUNDS TRACEABLE THERETO;

(collectively, the "Defendant Funds" or the "defendant-in-rem funds").

    2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

    3. Venue is proper under 28 U.S.C. § 1355(b)(1)(A) because actions and omissions giving rise to forfeiture took place in the Southern District of New York.

    4. On or about October 11 2007, United States Magistrate Judge Michael H. Dolinger issued warrants pursuant to 18 U.S.C. § 981(b) for the seizure of the Defendant Funds on the grounds that there was probable cause to believe that such funds were property constituting and derived from proceeds of a fraudulent scheme and property traceable to such property, and were thereby subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(C) and § 984.

    a. Pursuant to the seizure warrants, agents of the United States Secret Service ("USSS") seized the Defendant Funds from the above-described accounts.

   b. The Defendant Funds, representing a sum of $189,685.62, are currently being held on deposit in the Department of Treasury Seized Asset Deposit Fund.

  5. The Defendant Funds constitute property constituting and derived from proceeds of a fraudulent scheme, in violation of 18 U.S.C. §§ 1343 and 1344, which make it a crime to, among other things, execute a scheme to defraud using the wires in interstate or foreign commerce, and to execute a scheme to obtain funds under the custody or control of a financial institution such as a federally insured bank or credit union.

### UNDERLYING INVESTIGATION OF GLOBAL USI COMMUNICATIONS

  6. Beginning in or about March 2007, a New York business known as USI Global Communication, Inc., received dozens of complaints from individuals claiming that the company made unauthorized withdrawals from their bank accounts. Law enforcement officials spoke with several of the complaining individuals and uncovered that the withdrawals were made by an unrelated company with a similar name, "GLOBAL USI COMMUNICATIONS" ("GLOBAL USI").

  7. According to public records databases, "Global USI Communication Services, Inc." is a Vermont corporation with an address of 289 College Road, Burlington, VT 05401 (the "Vermont address"). Its president is listed as FRANCES RONA REORANGI; its secretary is KIRAN GUNDRAI, a/k/a "Kevin Gundrai." Other

addresses listed for the company include 116 West Service Road, Suite 330, Champlain, NY (the "Champlain, NY address"); 137 Avenue Lindsey, Dorval, Quebec H9P-2S6, Canada; and 4950 Queen Mary, Montreal, Quebec H3W-1X3, Canada. Telephone numbers publicly listed for the business include an area code (514) number (the "(514) Number") listed to a Montreal, Canada service provider and a toll free number (the "(800) Number").

        8.    Complaining witnesses identified GLOBAL USI as making unauthorized withdrawals from their bank accounts. For example, a complaining witness ("CW-1") who lives in the Bronx, New York, told law enforcement officers the following:

        a.    Approximately three months ago, CW-1 received a telephone call from an individual who said, in sum and substance, that CW-1 had won $1,000 and could receive free calling cards and other benefits. The individual requested CW-1's bank account information, so that the money CW-1 had won could be deposited. The individual did not request authorization to make any withdrawals.

        b.    CW-1 gave the caller CW-1's name, address, telephone number, the name of CW-1's bank (Bank of America), and checking account number. Money was never deposited into CW-1's bank account, as promised. On four occasions in and about August and September 2007, a total of more than $1,000 was paid from CW-

1's account to "Global USI Communications," which payments CW-1 never authorized.

    c. CW-1 located and called the (800) Number listed for GLOBAL USI and left a message. CW-1's call was returned by a woman who advised that no additional withdrawals would be made and who offered to send CW-1 a prepaid Visa card with a $5,000 balance that CW-1 could use to go shopping. CW-1 declined the Visa card.

    9. Other complaining witnesses had similar experiences.

    a. For example, a second complaining witness ("CW-2") received a call in or about April 2006 from a company identifying itself as "GLOBAL USI." CW-2 received calls from GLOBAL USI on two occasions, first from a man, and then from a woman, both of whom had thick, Indian accents. One individual CW-2 spoke with said that GLOBAL USI was working with the federal government to subsidize loans for lower income families. The individual CW-2 spoke with already knew, and confirmed, CW-2's name, address, bank, and account number. CW-2 told the individual who called that CW-2 was a victim of Hurricane Katrina and was experiencing financial hardships. CW-2 asked the caller whether CW-2 would be required to repay any loan, to which the caller responded in the negative. CW-2 never authorized the caller to withdraw any funds from CW-2's account. Yet beginning

in or about April 2006, CW-2 noticed unauthorized withdrawals from CW-2's account, and at times CW-2's bank account became overdrawn as a result. CW-2 never received the proceeds of any loan. Records from CW-2's bank account show that on three occasions, a total of more than $390 was paid from CW-2's account to "Global USI Communications" in and about August and September of 2007.

        b.    A third complaining witness ("CW-3") received a call in and about July 2007, from a person with a Pakistani or Indian accent who said he was calling on behalf of GLOBAL USI and offered to sell CW-3 a prepaid Visa card with a $5,000 balance in exchange for approximately $200 cash. CW-3 agreed to purchase the card and provided a name, address, telephone number, and checking account information, but CW-3 never authorized any other withdrawal from CW-3's account besides that $200. CW-3 never received the Visa card, and on five occasions from in or about July 2007 through September 2007, a total of more than $650 was paid from CW-3's account at Wachovia Bank to "Global USI Communications." Since the initial call in July 2007, CW-3 spoke with both a man and a woman, and the woman was identified as a supervisor. When CW-3 asked for GLOBAL USI's address, CW-3 was given the Champlain, NY address.

        c.    A fourth complaining witness ("CW-4") does not recall having any oral or written communications with anyone

at a company named "Global USI Communications," nor did CW-4 ever authorize GLOBAL USI to make any withdrawals from CW-4's account. However, on two occasions in August and September 2007, a total of more than $390 was paid from CW-4's account at the Navy Federal Credit Union to "Global USI Communications."

10. Other GLOBAL USI "customers" interviewed in connection with this investigation all described similar fraudulent withdrawals from their bank accounts.

11. In and about June 2007, as part of its scheme to defraud, GLOBAL USI engaged eCommerce Cubed, Inc. ("EC3") to provide transaction clearing services. GLOBAL USI represented to EC3 that it sold phone cards, telephone plans, and weight loss plans through its call centers, and retained EC3 to collect money that GLOBAL USI claimed it is owed by its customers. EC3 subcontracted some of its work on behalf of GLOBAL USI to Transaction Technologies ("TT").

### BASES TO FORFEIT THE DEFENDANT FUNDS

12. From in or about July 2007 to the present, EC3 and TT attempted to process more than 12,000 transactions totaling more than $1.5 million on behalf of USI. Although most of the attempted transactions were returned as unprocessed, more than $300,000 was successfully withdrawn from bank accounts as payments to GLOBAL USI.

13. The money that was fraudulently obtained from

GLOBAL USI customers was deposited into bank accounts controlled by one of the two clearing companies.

  a. The first account is held by EC3 at Westside Bank in Georgia (the "Westside Account"). The funds in the Westside Account related to GLOBAL USI transactions are designated by a merchant number specific to GLOBAL USI, such that EC3 can determine at any time how much business it has pending or cleared on behalf of GLOBAL USI. Pursuant to the terms of its contract with GLOBAL USI, EC3 holds the designated GLOBAL USI funds in escrow for a specified period, after which it releases the funds for transfer to GLOBAL USI bank accounts, which are described in more detail below.

  b. Other funds GLOBAL USI has fraudulently obtained since July 2007 were deposited into an account in the name of TT, held at First Citizens Bank in North Carolina (the "First Citizens Account"). Similar to the Westside Account, GLOBAL USI funds deposited into the First Citizens Account are held in escrow for a period of time prior to their release. The funds held in escrow that TT processes on behalf of EC3 are not designated by individual merchant while held in the First Citizens Account. However, according to representatives of EC3, as of October 9, 2007, there was approximately $62,000 in GLOBAL USI transactions pending in escrow.

   c. Rather than being transferred directly to GLOBAL USI, the First Citizens Account funds are deposited into a second escrow account held by EC3 at Ironstone Bank, a subsidiary bank of First Citizens (the "Ironstone Account"). The funds are then held in the Ironstone Account for approximately two days before being transferred to GLOBAL USI's accounts.

  14. When the funds earmarked for GLOBAL USI have been released from escrow, they have been transferred to one of two accounts at First Northern Bank: account number ▮8187 ("First Global USI Account") and account number ▮6168 (the "Second Global USI Account").

   a. The First Global USI Account was opened on or about July 10, 2007, in the name of STEVEN N. ENGELSON. Subsequently, FRANCES RONA REORANGI was added as a joint account holder. The account was opened with a $50 deposit made in the form of a check signed by ENGELSON and drawn on another account at First Northern Bank, numbered ▮2322, the name of ICash Systems, LLC, and controlled by him.

   b. Records obtained from First Northern Bank show that, between July 13, 2007 and August 13, 2007, approximately $53,574.27 was sent from EC3 to the First Global USI Account. However, the average daily balance between July 13 and August 13, 2007, was only approximately $1,261, because

almost as soon as money was transferred by EC3 into the account, it was transferred out.

   c. On or about August 10, 2007, EC3 received instructions to start sending money on GLOBAL USI's behalf to the Second Global USI Account. According to documents provided by First Northern Bank, the Second Global USI Account was opened as a business account by ENGELSON in the name of a company named USI America LLC, ███████████ Ridge, Winters CA (the "Winters Address"), on or about October 6, 2006. On or about July 30, 2007, ENGELSON and REORANGI completed a revised signature card on the Second Global USI Account. The account owner was changed to ICash Systems, P.O. Box 1236, Winters CA 95694.

   15. The funds in the Global USI Accounts were quickly transferred out to one of nine accounts, six of which are in the names of businesses located offshore, in India or Canada. More than $25,000 was transferred to U.S.-based beneficiaries. Of that, approximately $2,250.00 was transferred to account ███9344, in the name of USI Services, held at Fifth Third Bank ("USI Services Account"). Funds from both the First and Second Global USI Accounts also have been transferred to two other accounts at First Northern Bank that are controlled by ENGELSON, numbered ███3222 (approximately $1,777) and ███3392 (approximately $870.84).

   16. Account activity indicated that funds transfers

were made online (using a computer and the internet) as well as by fax. REORANGI would fax wire transfer requests to First Northern Bank, providing ENGELSON's name as the "originator." First Northern Bank would then call ENGELSON, pursuant to a security procedure in place with the bank, and verbally confirm with ENGELSON that the transfer was authorized.

17. The "statement of information" obtained from the California Secretary of State, and filed on or about July 27, 2007, for the account owner of the Second Global USI Account, ICash Systems LLC, lists the following for that company: a "street address of principal executive office" of P.O. Box 1236, Winters CA 95694, and a "California office where records are maintained" at the Winters Address. ENGELSON, who signed the form, is the only manager listed. Other records obtained from the Secretary of State indicate that ICash Systems was formerly named USI America LLC.

18. Records obtained from the California Department of Motor Vehicles indicate that ENGELSON resides at ▮▮▮▮▮▮ Ridge, Winters, CA 95694, which is the same as the Winters Address associated with USI America. According to the United States Postal Service, ENGELSON receives mail at this address.

19. Based on the foregoing, there is probable cause to believe GLOBAL USI is conducting a scheme to defraud thousands of consumers by obtaining their bank account information through

false pretenses and misrepresentations, and using that information to make unauthorized withdrawals and transfers from the consumers' accounts, in violation of Title 18, United States Code, Sections 1343 and 1344. As set forth above, the proceeds of this scheme have been deposited into accounts controlled by ENGELSON AND REORANGI and held at First Northern Bank, which funds were then sent on to other accounts both in the United States and overseas. There is probable cause to believe that the Defendant Funds are property which constitute or are derived from proceeds traceable to wire fraud and financial institution fraud, in violation of 18 U.S.C. §§ 1343 and 1344.

## CLAIM FOR FORFEITURE

20. Incorporated herein are the allegations contained in paragraphs one through twenty-eight of this Verified Complaint.

21. Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture:

> "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section ... 1344 of this title or any offense constituting "specific unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

22. 18 U.S.C. § 1956(c)(7) provides that the term "specified unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1) of this title".

Section 1961(1) includes "section 1343 (relating to wire fraud) and any act related to financial institution fraud, in violation of 18 U.S.C. § 1344."

23. By reason of the above, the defendant-in-rem funds are subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C), because there is probable cause to believe that they constitute property derived from — and property traceable to such property — wire fraud, in violation of 18 U.S.C. § 1343, and financial institution fraud, in violation of 18 U.S.C. § 1344.

24. Title 18, United States Code, Section 984 provides in relevant part that:

> (a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or precious metals –
>
> > (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
> >
> > (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

15

>(b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

25. By reason of the above, the defendant-in-rem funds are subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 984, because there is probable cause to believe that the defendant-in-rem funds constitute proceeds of the wire fraud and/or property involved in financial institution fraud that were deposited into the seized accounts within the past year.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the defendant-in-rem funds and that all persons having an interest in the defendant-in-rem funds be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the defendant-in-rem funds to the United States of

America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
       April 4, 2008

                    MICHAEL J. GARCIA
                    United States Attorney for the
                    Southern District of New York
                    Attorney for the Plaintiff
                    United States of America

By: _____
    SHARON FRASE (SF-4906)
    Assistant United States Attorney
    One St. Andrew's Plaza
    New York, New York 10007
    Telephone: (212) 637-2329

VERIFICATION

STATE OF NEW YORK            )
COUNTY OF NEW YORK           :
SOUTHERN DISTRICT OF NEW YORK )

      Linda Canfield, being duly sworn, deposes and says that she is a Special Agent with the United States Secret Service, and as such has responsibility for the within action; that she has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of her knowledge, information, and belief.

      The sources of deponent's information on the ground of her belief are official records and files of the United States and information obtained directly by the deponent and other law enforcement agents during an investigation of alleged violations of Title 18, United States Code.

_____
Linda Canfield
Special Agent
United States Secret Service

Sworn to before me this
4th day of April, 2008

_____
NOTARY PUBLIC

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires May 8, 2010